**Roger Trenton DAVIS, Petitioner,**

v.

**Robert F. ZAHRADNICK, Director Department of Corrections and R. M. Muncy, Superintendent Powhatan Correctional Center, Respondents.**

Civ. A. No. 76–0021.

United States District Court,
W. D. Virginia,
Charlottesville Division.

May 5, 1977.

---

Edward L. Hogshire, Charlottesville, Va., for petitioner.

K. Marshall Cook, Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM OPINION

TURK, Chief Judge.

In March of 1974, the petitioner, Roger Trenton Davis, was convicted by a jury in the Circuit Court of Wythe County, Virginia of possession of marijuana with the intent to distribute, and of distribution of marijuana. Although the total quantity of marijuana involved in the two offenses was less than nine ounces, he was fined Ten Thousand Dollars ($10,000) and sentenced to 20 years of imprisonment for each offense, the sentences to be served consecutively. Petitioner Davis appealed his convictions to the Supreme Court of Virginia. However, by order dated October 23, 1974, the Supreme Court of Virginia denied Davis's petition for a Writ of Error. Davis is now

before this court, seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.

The petitioner asserts that his conviction is constitutionally infirm for the following reasons:

1) He was denied trial by an impartial jury.

2) He was subjected to an illegal search and seizure.

3) He was denied due process by the trial court's failure to strike the evidence after the prosecution failed to prove his possession of marijuana beyond a reasonable doubt.

4) He was denied due process in that the evidence failed to establish that the substance involved was cannabis sativa L.

5) The sentence imposed constitutes cruel and unusual punishment.

The first four grounds are of little moment and need not long detain the court.

Davis' first claim, that he was denied a trial by an impartial jury, is founded on the trial court's refusal to strike a member of the jury panel for cause. The juror, John M. Shaffer, indicated during *voir dire* that he had read a newspaper account of an earlier drug-related charge against Davis. Counsel for Davis objected to Shaffer, and the following exchange then took place:

THE COURT: Let me ask you one final question, Mr. Shaffer. Do you think you can give each side in this case a fair and impartial trial?

MR. SHAFFER: Yes, sir.

THE COURT: Based solely upon the law and the evidence that you will hear in this courtroom:

MR. SHAFFER: That's right.

THE COURT: And not upon what you have heretofore heard or read or upon any outside influence whatever?

MR. SHAFFER: That's right.

THE COURT: Is there any doubt in your mind? Because if there is, I want you to tell me.

MR. SHAFFER: No. (Record 35–36).

The objection was overruled, and Shaffer was accepted as a panel member. He did not serve on the jury, however; he was struck by defense counsel in one of their four peremptory challenges.

It is petitioner's contention that the trial court erred in not striking Shaffer and that the error was not cured by the exclusion of Shaffer through peremptory challenge. He argues that the trial court's refusal to remove Shaffer for cause operated so as to prejudice the defense's ability to make full and effective use of its peremptory challenges. However, this court does not agree. The United States Constitution guarantees a criminal defendant the right to be tried by " . . . a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). It is clear that a juror's knowledge of prior offenses of a defendant will not disqualify that juror, if the juror is able to set aside all preconceptions and render a fair and impartial verdict based solely on the evidence presented in court. *Irvin v. Dowd, supra; Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *United States v. Gay,* 522 F.2d 429 (6th Cir., 1975). The *voir dire* examination of Shaffer, by the court and counsel, revealed no apparent bias or predetermination resulting from his prior knowledge. Moreover, Shaffer unequivocally stated that he could make an impartial judgment based solely on the evidence presented. Given such circumstances, this court can perceive no constitutional error in the trial court's refusal to discharge Shaffer. Furthermore, even if the refusal to discharge was erroneous, the error was clearly so harmless as to preclude any claim for *habeas* relief. *United States v. Tweed,* 503 F.2d 1127 (7th Cir., 1974); see *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Petitioner's next contention is that certain evidence introduced at his trial was obtained as the result of an unconstitutional search of his home. The court need not reach the merits of this claim since the question was fully litigated at trial and on appeal. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the United States Supreme Court held that a state

prisoner may not obtain federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was used in his trial, if the state provided an opportunity for full and fair consideration of the Fourth Amendment claim. Davis raised and litigated this claim before his state trial. (Record 15–21). He later presented the claim in his appeal to the Supreme Court of Virginia. Consequently, the propriety of the search and seizure cannot now constitute a ground for relief in this court.

■ As his third contention, Davis alleges that the prosecution failed to prove, beyond a reasonable doubt, this possession of a 168 gram bag of marijuana, which served as the basis for the conviction of possession with intent to distribute.[1] As respondents noted in their brief, this question essentially concerns the sufficiency of the evidence, and the appropriate standard of review on federal habeas corpus is whether there is any evidence at all to support the conviction. *Holloway v. Cox,* 437 F.2d 412 (4th Cir., 1971); *Williams v. Peyton,* 414 F.2d 776 (4th Cir., 1969).

■ Clearly, the evidence in this case meets the sufficiency standard. The bag of marijuana involved was found in the backyard of Davis' home during a search by state police. Although Davis was in the house along with several other people at the time of this search, there was unrebutted testimony that the bag was found approximately 15 feet behind a window at the back of the house. The window was found open and was in what Davis described as his room. There was further testimony by one of the officers that, immediately after entering the building, he discovered Davis alone in this room, hiding in a closet. A

scale, cigarette papers, and a bag containing roughly 8 grams of marijuana were also found in the room. Finally, Danny Ray Eads, a police informer who testified that he had purchased marijuana from Davis on the day prior to the search, stated that the transaction took place in that room. Eads indicated that Davis took the marijuana which he sold to Eads from a bag lying in the middle of the floor. Thus, there is evidence to support petitioner's conviction of possession with intent to distribute.

Davis also asserts that the evidence presented at his trial failed to establish beyond a reasonable doubt that the substances which he was charged with selling and possessing were cannabis sativa L. At the time of petitioner's trial, the Code of Virginia defined "marijuana" as " . . . any part of the plant cannabis sativa L. . . . " Ch. 94, § 54–524.2(b)(16), Va. Acts of Assembly, 1971 Spec.Sess. Davis argues (1) that cannabis consists of more than one species, i. e., that it is polytipic, (2) that cannabis sativa L was the only species prohibited by the Virginia Code provisions under which he was prosecuted, and (3) that it was not shown that the substances involved in his convictions were cannabis sativa L instead of some other species of cannabis. Obviously, this contention also raises a question of sufficiency of the evidence.[2] See *Holloway v. Cox, supra; Williams v. Peyton, supra.*

Both sides presented their own expert witness at the state trial. Dr. James I. Reveal, an assistant professor of botany at the University of Maryland, testified for the defense. He stated that there are four species of cannabis in addition to cannabis sativa L, and that the species are impossible to differentiate once they are cut up. However, he conceded on cross-examination that

---

1. Davis was found guilty of feloniously distributing marijuana on October 25, 1973. The amount of marijuana involved was approximately 84 grams. On October 26, 1973, a search warrant was issued and the Davis home was searched. The 168 gram bag was found at this time.

2. The same argument has been advanced and rejected in a number of federal prosecutions for

marijuana trafficking. See, e. g., *United States v. Velasco,* 539 F.2d 707 (4th Cir., 1976); *United States v. Gaines,* 489 F.2d 690 (5th Cir., 1974); *United States v. Rothberg,* 480 F.2d 534 (2nd Cir., 1973) *cert. denied,* 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). Under 21 U.S.C. § 802(15), marijuana is defined, in pertinent part, as " . . . all parts of the plant Cannabis sativa L. . . . "

this opinion is not universally accepted and that some botanists continue to believe that only one species of cannabis exists. Mr. Leon Reynolds, an analytical chemist in the State's Bureau of Forensic Science, appeared for the prosecution. He related that he had tested the substances allegedly possessed and sold by Davis and that they were marijuana. He stated that he was familiar with the controversy regarding the number of species of cannabis, but that he was of the opinion that cannabis sativa L constituted the only species. Consequently, the court must find that there was evidence from which the jury could conclude that the substances were cannabis sativa L.

Petitioners final contention concerns the severity of his punishment. As noted above, Davis was fined a total of $20,000 for both offenses and sentenced to two, twenty year terms to be served consecutively. Petitioner urges that such penalties are so excessive as to contravene the Constitutional prohibition against cruel and unusual punishment.

The Eighth Amendment to the Constitution of the United States provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." In proscribing cruel and unusual punishment, the framers of the Constitution of the United States were concerned with barbarous methods of punishment or execution. *See Gregg v. Georgia*, 428 U.S. 153, 169–170, 96 S.Ct. 2909, 49 L.Ed.2d 929 (1976); *Furman v. Georgia*, 408 U.S. 238, 316–328, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

> But the court has not confined the prohibition embodied in the Eighth Amendment to "barbarous" methods that were generally outlawed in the 18th century. Instead the Amendment has been interpreted in a flexible and dynamic manner. The court earlier recognized that "a principle to be vital must be capable of wider application than the mischief which gave it birth." [Citations omitted]. Thus the clause forbidding "cruel and unusual" punishment "is not fastened to the obsolete but may acquire meaning as public

opinion becomes enlightened by humane justice." [Citations omitted].

*Gregg v. Georgia, supra* at 171, 96 S.Ct. 2909, 2924.

In considering Davis's Eighth Amendment claim, the court must remain cognizant of the precept that the Eighth Amendment draws "its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 98 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). However, the court cannot limit its analysis to its own perception of the current standards of decency that may or may not prevail in this society. To do so would obviously entail an overstepping of the judicial function. "[T]he requirements of the Eighth Amendment must be applied with an awareness of the limited role to be played by the courts." *Gregg v. Georgia, supra*, 428 U.S. at 174, 96 S.Ct. at 2925. Clearly, the decision of the legislature as to appropriate punishments for particular offenses must be accorded great deference. "[W]hile we have an obligation to insure that constitutional bounds are not overreached, we may not act as judges as we might as legislatures." *Id.*, at 174, 96 S.Ct. at 2926. However, there can be no doubt that the Eighth Amendment was intended to have a significant impact. The courts must not abdicate their role of deciding whether punishment contravenes the Eighth Amendment of the United States Constitution.

> Judicial review, by definition, often involves a conflict between judicial and legislative judgment as to what the Constitution means or requires. In this respect, Eighth Amendment cases come to us in no different posture. It seems conceded by all that the Amendment imposes some obligation on the judiciary to judge the constitutionality of punishment and that there are punishments that the Amendment would bar whether legislatively approved or not.

*Furman v. Georgia, supra*, 408 U.S. at 313–314, 92 S.Ct. at 2764 (White, J., concurring). With such understandings in mind, the court undertakes its determination as to

whether the punishment in this case exceeds the permissible boundaries.

 This case does not present questions as to the validity of the statute under which the defendant was sentenced. Moreover, it is clear that petitioner's sentence was within the applicable statutory provisions.[3] Davis contends that the sentence was excessive as applied to the circumstances of his case. Can the length of petitioner's sentence alone serve as a basis for *habeas* relief? Other than for the recent death penalty cases, the Eighth Amendment law is relatively undeveloped.[4] However, given the pronouncements of the Supreme Court on the subject, it becomes apparent that excessiveness is the hallmark of cruel and unusual punishment. *Gregg v. Georgia, supra*, at 173, 96 S.Ct. 2909. Moreover, one of the primary criteria for an evaluation of "excessiveness" is the disproportionality of the sentence in relation to the offense. *O'Neil v. Vermont*, 144 U.S. 323, 339–340, 12 S.Ct. 693, 36 L.Ed. 450 (1892); *Weems v. United States, supra*, 217 U.S. at 367, 30 S.Ct. 544; *Furman v. Georgia, supra*, 408 U.S. at 243, 92 S.Ct. 2726 (Douglas, J., concurring); *Robinson v. California, supra*, 370 U.S. at 667, 82 S.Ct. 1417. Respondents correctly contend that while the Supreme Court has acknowledged that disproportionate punishment may contravene the Eighth Amendment, it has never held a sentence of imprisonment to constitute cruel and unusual punishment solely because of its length. Obviously, the capi-

tal punishment cases were primarily concerned with the severity of the sentences and the fairness of the statutory guidelines under which the sentences were rendered. Other Supreme Court cases were concerned more with the enormity of the human loss and degradation than with the length of the sentence itself.[5] However, there can be no doubt that the Supreme Court has manifested a willingness to apply the criteria of excessiveness both in the abstract and in the particular.[6] Thus, while even the maximum sentences under the Virginia statutory provision may not constitute cruel and unusual punishment in most cases, this court has absolutely no difficulty with the proposition that the assessment to be made in the instant case must, by necessity, incorporate petitioner's individual circumstances. Cf. *Furman v. Georgia, supra*, 408 U.S. at 273, 92 S.Ct. 2726 (concurring opinion of Mr. Justice Brennan); *Hart v. Coiner*, 4 Cir., 483 F.2d 136, 139, *cert. denied* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974), rehearing denied 416 U.S. 916 (1974). Given the inescapable conclusion that a sentence may be excessive to one individual and appropriate to another, even though both individuals are similarly situated in terms of the broad statutory sentencing provisions, it seems only reasonable to infer that the length of an otherwise valid sentence is not immune from constitutional scrutiny.

Respondents place great reliance on the fact that the Supreme Court has never found a sentence to be unconstitutional

---

**3.** Possession of marijuana with intent to distribute and distribution each carry a maximum sentence of forty years and a Twenty Five Thousand Dollar ($25,000) fine. Va.Code Annotated § 54–524.101:1 recodified as § 18.2–248 (Supp.1976).

**4.** In cases not involving the death penalty, the Supreme Court has found certain punishments to contravene the Eighth Amendment. The three primary cases are *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) (12 years incarceration in chains at hard and painful labor for falsification of a government document); *Trop v. Dulles, supra* (expatriation for wartime desertion); and *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (imprisonment for narcotics addiction).

**5.** See n. 4, *supra*.

**6.** In *Gregg v. Georgia, supra* 428 U.S. at 173, 96 S.Ct. 2909, the Court specifically noted that when a form of punishment in the abstract is being evaluated, proportionality is one factor to be considered. More importantly for the instant case, the Court also considered proportionality to be a relevant guideline in determining whether an otherwise valid statutory sentencing scheme had been properly applied to a *particular* individual. *Id.*, at 198, 96 S.Ct. 2909. In the case of the Georgia capital punishment statute, the determination of proportionality is specifically delegated by law to the Georgia Supreme Court.

solely because of its length. However, in *Weems v. United States, supra,* the Court cited, with approval, the concession of the highest state court in Massachusetts that a term of imprisonment "might be so disproportionate to the offense as to constitute a cruel and unusual punishment." 217 U.S. at 368, 30 S.Ct. at 549. Moreover, two Circuit Courts of Appeal have accepted the same proposition.[7] In a case similar to this one where "the amounts of marijuana involved were very small" the Court of Appeals for the Sixth Circuit held a sentence of from 10 to 20 years imprisonment for possession of marijuana with the intent to distribute and 20 to 40 years for the sale of marijuana to be unconstitutional. In light of less severe penalties provided for other offenses, including violent offenses, the Court concluded that the sentence imposed "was excessive in length and disproportionate to the nature of the offense" for which the petitioner was convicted and was, therefore, cruel and unusual punishment in contravention of the Eighth Amendment. *Downey v. Perini,* 518 F.2d 1288, 1289 and 1292 (6th Cir., 1975) vacated on other grounds 423 U.S. 933, 96 S.Ct. 419, 46 L.Ed.2d 367.[8] Moreover, the Court of Appeals for the Fourth Circuit made a thorough evaluation of the question of proportionality in *Hart v. Coiner, supra.* In *Hart,* the defendant was tried and convicted pursuant to a West Virginia recidivist statute which required a mandatory life sentence to be imposed upon persons convicted three separate times of offenses punishable by imprisonment in the penitentiary. The three underlying offenses of which the defendant was convicted were writing a check on insufficient funds for $50.00, transporting a forged check in the amount of $140.00 across state lines, and perjury. Having exhausted his state remedies, he petitioned the U. S. District Court for a writ of habeas corpus. His petition was denied, and he appealed the denial to the Court of Appeals for the Fourth Circuit. He did not attack the validity of the recidivist statute but rather raised the question of whether the mandatory life sentence imposed in his case was "so excessive and disproportionate to the underlying offenses as to constitute cruel and unusual punishment". *Id.,* at 139. Inasmuch as the Fourth Circuit relied heavily on criteria developed in *Furman v. Georgia, supra,* and inasmuch as *Hart* now represents the prevailing law in this circuit, this court considers the guidelines of *Hart* to be highly relevant for purposes of the instant case.

Beginning its examination, the Court in *Hart* noted that "[t]he doctrine that an excessive sentence may be invalid solely because of disproportionality is not a new one". *Id.,* at 139. The court then delineated four elements which it considered in determining that the sentence imposed violated the Eighth Amendment. First, the court looked to "the nature of the offense itself", stating that "in assessing the nature and gravity of an offense, courts have repeatedly emphasized the element of violence and danger to the person". *Id.,* at 140. Looking to the petitioner's underlying

7. There is support for the contrary proposition. *See, e. g. Rener v. Beto,* 447 F.2d 20 (5th Cir., 1971), *cert. denied* 405 U.S. 1051, 92 S.Ct. 1521, 31 L.Ed.2d 787 (1972); *Anthony v. United States,* 331 F.2d 687 (9th Cir., 1964).

8. The Supreme Court vacated the judgment and remanded the case for reconsideration in light of the enactment of Ohio Revised Code Annotated Section 2925.03, by Amended Substitute House Bill No. 300, File No. 105, §§ 1, 3, effective Nov. 21, 1975.

Respondents in this case have argued that "the amended Statute took effect three months after Downey was convicted and did not apply retroactively, so the vacation by the Supreme Court seems to be based on the considerations which moved the Sixth Circuit Court of Appeals to hold the sentence cruel and unusual." (Respondent's memorandum filed March 11, 1977). However, this court finds the respondent's arguments to be mis-guided. Section 3 of the Act provides in part that "any person convicted or serving a sentence of imprisonment for an offense under existing law that would be an offense on the effective dates specified in section 4 of this act but would entail a lesser penalty than the penalty provided for the offense under the existing law shall be sentenced according to the penalties provided in this act or have his existing sentence modified in conformity with the penalties provided in this act."

convictions, the court noted that "[n]one included violence or danger of violence toward persons or property". *Id.*, at 141. The second factor examined was the legislative purpose behind the punishment, and the court determined that life imprisonment was unnecessary to accomplish the legislative purpose of protecting society "from an individual who has committed three wholly nonviolent crimes . . .". *Id.* 141. Third, the court compared the petitioner's punishment with how he would have been punished in other jurisdictions, finding it unlikely that he would have received such a sentence elsewhere. Fourth, the court examined the "punishment available in the same jurisdiction for other offenses . . ." and determined that "the penalties provided for grave crimes of violence in West Virginia reveals the irrationally disparate treatment visited upon" petitioner. *Id.* 142.

■ After an examination of the present case and in light of the factors outlined in *Hart* this court is constrained to conclude that the punishment imposed on this petitioner is in contravention of the Eighth Amendment of the United States Constitution. Looking first to the nature of the offense this court finds no element of violence and minimal, debatable danger to the person. The second factor considered in *Hart* involves an examination of the purpose behind the punishment and a determination of the less restrictive alternatives. The purpose of the statute is to stop the sale of a questionably harmful drug. In scrutinizing the less restrictive alternatives, a court must conscientiously avoid an invasion of the legislative province. A court "may not require the legislature to select the least severe penalty possible so long as the penalty is not cruelly inhumane or disproportioned to the crime involved." *Gregg v. Georgia, supra,* 428 U.S. at 175, 96 S.Ct. at 2926. This court is of the opinion that because of these competing principles, a

disparity determination can be made only upon a finding that the sentence imposed is so grossly disparate to the crime committed that it ceased to be rational. Furthermore, as noted above, this determination must be made in light of the "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles, supra,* 356 U.S. at 101, 98 S.Ct. at 598.

■ Clearly, the relevant question specifically concerns whether the sentence of 40 years in the penitentiary and the imposition of twenty thousand dollars in fines for the possession and sale of less than nine ounces of marijuana is so grossly disproportionate that it ceases to be rational. The Virginia statute prohibiting the possession and sale of marijuana does not provide increased punishment corresponding to the quantity possessed or sold, and this court cannot so require.[9] But neither can this court be blind, in determining proportionality, to the fact that the quantity involved is less than nine ounces. The important factor is not that the legislative purpose could be served by a less severe punishment, for that is a judgment for legislatures to make, but that it could be served by a "significantly less severe punishment". "If there is a significantly less severe punishment adequate to achieve the purpose for which the punishment is inflicted, [citations omitted] the punishment inflicted is unnecessary and therefore excessive." *Furman v. Georgia, supra,* 408 U.S. at 279, 92 S.Ct. at 2747 (Brennan, J., concurring).

■ As a third consideration, this court must look to the punishment imposed and compare it to corresponding sentencing provisions in other jurisdictions. As previously noted, in Virginia, possession of marijuana with intent to distribute and actual distribution each carry a maximum sentence of forty years and a Twenty Five Thousand Dollars ($25,000) fine.[10] The petitioner's ac-

9. Many states have sought to take advantage of contoured statutes graduated according to the facts of the case. Ohio Revised Code Section 2925.03 (Supp.1976), under which the petitioner in *Downey v. Perini, supra,* was resen-

tenced, in an excellent example of a legislature effectively precluding arguments relating to disproportionality in sentencing.

10. See n. 3, *supra.* Only the States of Arizona, Missouri, and Montana have greater maximum

tual sentence of twenty years for possession with intent to distribute exceed the maximum penalty available in all but four states, irrespective of the quantity possessed for sale.[11] Likewise, the sentence of twenty years imprisonment for distribution exceeds the maximum penalty available in all but eight states, irrespective of the quantity sold.[12]

The fourth factor this court must consider is the punishment available in the same jurisdiction for other offenses. In Virginia, at the time of Davis' convictions, other offenses which carried *maximum sentences of twenty years* included murder in the second degree; mob shooting, stabbing, etc. with intent to maim or kill; abduction; attempt to poison with intent to kill or injure; malicious shooting, stabbing, etc. with intent to maim, disfigure, disable or kill; and attempted murder. Chapter 358, §§ 18.1–23, 30, 37, 64, 65, *Virginia Acts of Assembly*, 1960 session. Voluntary manslaughter, wounding a person in attempting or committing a felony, and taking indecent sexual liberties with children on the other hand carried only five year maximum sentences. Chapter 358, §§ 18.1–24, 68,215(4), *Virginia Acts of Assembly*, 1960 session. Further, this court cannot help but notice that for distribution, as far as punishment is concerned, the Virginia legislature makes no differentiation of heroin from marijuana.

The factors listed in *Hart* are not exhaustive of the elements which may combine to constitute punishment cruel and unusual within the proscriptions of the Eighth Amendment. A court must take cognizance of punishment inflicted in the same jurisdiction for the same or similar crimes. If there is any one strand linking together the opinions constituting the judgment of the court in *Furman v. Georgia, supra,* it is that the erratic, freakish, and unusual infliction of punishment raises problems of Eighth Amendment propor-

tions. From October 31, 1975 to August, 1976 one hundred and seventeen (117) inmates were committed to the State Department of Corrections for possessing, selling, or manufacturing marijuana. The average sentence for these offenses was three years and two months, the minimum was sixty days, and the maximum was fifteen years. (Stipulation filed November 10, 1976). Nevertheless, this petitioner was sentenced to forty years and twenty thousand dollars in fines on offenses involving less than nine ounces of marijuana. The Commonwealth's Attorney who prosecuted the case is of the opinion that the case represents a "grave disparity in sentencing" and that petitioner's continued confinement in light of sentences elsewhere is "grossly unjust". (Supplemental Stipulation filed March 18, 1977). This court shares in the opinion of the prosecutor.

This court is well aware that "a heavy burden rests on those who would attack the judgment of the representatives of the people". *Gregg v. Georgia, supra,* 428 U.S. at 175, 96 S.Ct. at 2926. However, courts should not shirk their responsibility to examine the propriety of applications of the law which work exceptional hardships on the sanctity and dignity of the individual. Moreover, when such examination reveals objective facts which establish the arbitrary nature and total irrationality of the application as to a particular individual, the courts must make the appropriate response. After examining the nature of the offense, the legislative purpose behind the punishment, the punishment in the Commonwealth of Virginia for other offenses, and the punishment actually imposed for the same of similar offenses in Virginia, this court must necessarily conclude that a sentence of forty years and twenty thousand dollars in fines is so grossly out of proportion to the severity of the crimes as to constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

---

penalties for distribution of marijuana and no state has a greater maximum penalty for possession with intent to distribute.

**11.** Alaska, Illinois, Montana, and Rhode Island.

**12.** Alaska, Arizona, Illinois, Mississippi, Missouri, Montana, Nevada, and Rhode Island.

A Writ of Habeas Corpus will this day issue.