MORRIS EDWIN ANGLIN, JR. *v.* STATE
OF MARYLAND

[No. 1152, September Term, 1974.]

*Decided September 9, 1975.*

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*Reginald W. Bours, III, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Thomas A. Blair, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Morris Edwin Anglin, Jr. was convicted by a jury in the

Circuit Court for Prince George's County for daytime housebreaking,[1] and for grand larceny[2] under one indictment (hereafter sometimes called Lyle case). In the same trial he was convicted also by the jury for receiving stolen goods of a value of over $100.00[3] under a second indictment (hereafter sometimes called Pearson case). He was sentenced to ten years imprisonment for daytime housebreaking; to fifteen years imprisonment for grand larceny to run consecutively; and to ten years imprisonment for receiving stolen goods to run concurrently.

The following contentions are made on appeal:

1. That appellant's motion for severance or mistrial in the Pearson case was improperly denied.
2. That there was a fatal variance in the Lyle grand larceny case.
3. That the evidence was legally insufficient to convict in the Pearson case.
4. That the prosecutor's closing argument requires reversal.
5. That the trial court erroneously restricted cross-examination of the State's witnesses.
6. That the trial court erroneously restricted direct examination of defense witnesses.
7. That the trial court erroneously allowed an attorney witness to invoke privilege.
8. That the sentences imposed were illegal because:

    (a) the sentencing judge gave consideration to disputed convictions or convictions when appellant was without counsel, or
    (b) they were so unfair as to constitute

---

1. The second count of indictment 14485 had charged that appellant, in the daytime, unlawfully did break into the dwelling of Nelson Lyle with intent to steal.

2. The third count of indictment 14485 had charged grand larceny of the goods of Nelson Lyle.

3. The fourth count of indictment 14486 had charged that appellant had received the stolen property of Danielle R. Pearson.

denial of due process and equal protection of the laws.

## 1. Severance or Mistrial

By virtue of the State's motion to consolidate, the Lyle indictment was joined with the Pearson indictment. A motion by appellant opposing the joinder of three indictments had been denied as to the two subject indictments but granted as to a third. Thereafter, the jury was empanelled in the consolidated cases. On the second day of trial appellant made an oral motion for a severance of the two indictments upon which trial had commenced. That motion was made upon the ground that the prosecution had stated that it would use less evidence in the Pearson case than discovery procedures had indicated to appellant would be presented by the State.

In the course of argument upon the motion for severance the following colloquy among appellant, State's attorney and court occurred:

"THE COURT: Let me make sure of this joinder.

MR. BLAIR: In addition to the motion to consolidate, which was granted, there was the defendant's motion opposing joinder of the three indictments for simultaneous trial dates. That was denied.

MR. ANGLIN: No, it was granted.

THE COURT: Granted as to one case but—

MR. BLAIR: But denied as to the two burglaries.

THE COURT: To the two burglary cases.

MR. ANGLIN: Right.

\* \* \*

THE COURT: And there was a consolidation of the two. If I recall, Mr. Anglin's concern was the trial of the third indictment jointly with the first

> and second indictments, and I felt that it may have been prejudicial to have allowed those three cases to be tried simultaneously, but apparently Mr. Anglin was in accord with the Court's determination to try 14,485 and 14,486, I believe those are the numbers, jointly.
>
> So, I would deny the motion to sever."

Thus it is clear that the basis for the motion for severance was as heretofore recited. Assuming, without deciding, that the motion for severance was timely under Rule 735, we see no abuse of discretion by the trial judge. *Hicks v. State,* 9 Md. App. 25, 262 A. 2d 66; *DiNatale v. State,* 8 Md. App. 455, 260 A. 2d 669.

The record does not support the statement in appellant's brief that there was a "motion for severance and/or mistrial." The sole reference to a mistrial upon this issue was made by the trial judge in bench discussions with appellant concerning his motion for severance, namely, "So, the only thing the Court would do now to accommodate the defendant is to declare a mistrial, and I don't see any grounds for that. I don't have any grounds for a mistrial." The appellant did not move for a mistrial below. That issue is not before us. Rule 1085.

We perceive no error.

### 2. Variance

The evidence shows that the items allegedly stolen by the appellant were owned by Nelson Lyle and his wife. The indictment had alleged that the stolen items were the property of Nelson Lyle.

The State contends that the issue was not raised below and that, under Rule 1085, it is not before us. Assuming, without deciding, that the issue was raised by appellant's motion for a judgment of acquittal as to all counts, we find no fatal variance.

Appellant cites our decision in *Sizemore v. State,* 5 Md. App. 507, 248 A. 2d 417, relying on our statement at 512-13 [420-21]:

"We think it clear that the count did not state the ownership of those goods shown to be partnership goods in the manner stated to be sufficient by the statute. While it is not necessary to name each partner, the statute requires that one be named and to state such property to belong to the one named 'and another or others.' The count here did not do so, placing ownership only in Gerhardt. But that the count did not state the ownership of the goods in the form stated to be sufficient by the statute as to partnership goods did not render the count defective. It made a proper allegation of ownership in an individual and was valid as framed. The question is, however, whether there was a variance between the allegation and the proof. That is to say, may a conviction of larceny be had under an allegation that the goods stolen were the property of Warren Jay Gerhardt on proof that the goods were the property of Gerhardt and another as co-partners. We do not think so. In *Melia v. State,* 5 Md. App. 354, we said, 'Since larceny is a crime against possession, * * * an allegation of the ownership of the property alleged to have been stolen is a necessary requisite in a larceny indictment and proof of ownership as laid in the indictment is an essential factor to justify a conviction * * *.' (citations omitted) In *Melia* we held that there was a fatal variance when the allegation was that goods were owned by two corporations and the proof was that they were owned only by one corporation. Here the allegation was that goods were owned by one person and the allegation was not in the form stated to be sufficient as to ownership in that person and another as partners by Md. Code, Art. 27, § 605. As to those goods proved to be owned by that person

and another as partners, the allegation was not sustained by the proof and there was a fatal variance."

His reliance is misplaced. *Sizemore* turned upon the provisions of Article 27, § 605,[4] introduced into the statutory law of Maryland by Ch. 63 § 1 of the Acts of 1852. The statute has remained without amendment since that time.

At the time of the passage of the statute, the property rights of a wife were limited in the extreme, as is demonstrated by the decision in *Herzberg v. Sachse*, 60 Md. 426, wherein it was said at 432:

"By virtue of the marriage tie the husband, as against all persons, except the wife or her trustee, (if she have one,) is entitled to the possession of her chattels. In fact, possessing her and them, his possession is her possession. His possession, therefore, may be interfered with to his injury. This is recognized in *Rogers v. Roberts*, 58 Md. 519."

The statute was intended to simplify, not to make more complex, the requisite allegations of criminal charging documents. The statute was not intended to require more complex procedural allegations as to offenses involving the property of married women. Legislative action was not necessary to simplify allegations of ownership as to such property and manifestly was not intended to require more complex allegations as to such property.

Early and late it has been said that "it is not to be

---

4. The section reads as follows:

"In any indictment for any felony or misdemeanor wherein it shall be requisite to state the ownership or possession of any property whatsoever, whether real or personal which shall belong to or be in the possession of more than one person, whether such persons be partners in trade, joint tenants, parceners, tenants in common or trustees, it shall be sufficient to name one of such persons, and to state such property to belong or to be in possession of the person so named, and another or others as the case may be; and whenever in any indictment for any felony or misdemeanor, it shall be necessary to mention for any purpose whatever any partners, joint tenants, parceners, tenants in common or trustees, it shall be sufficient to describe them in the manner aforesaid."

presumed that the Legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the Act did *not* intend to make any alteration *other* than what is *specified,* and besides *what has been plainly pronounced."* *Hooper v. Baltimore,* 12 Md. 464, 475; *Lutz v. State,* 167 Md. 12, 15, 172 A. 354, 355-56. See also: *Baltimore v. Baltimore Gas & Electric Co.,* 232 Md. 123, 192 A. 2d 87.

The subsequent passage of a married woman's property act [5] would not enlarge the effect of that prior statute. Annotation 2 A.L.R. 352, *et seq.*

In *State v. Martin,* 208 S.W.2d 203 (S. Ct., Mo., 1948), where the information charged the larceny of ladies' rings and alleged that they were the property of the husband, the Court said at 208:

> "If the rings actually belonged to both husband and wife it was still sufficient to plead ownership in him."

To the same effect is *Haley v. State,* 191 S.W.2d 741, 742 (Ct. of Crim. App. of Texas, 1946).

We hold, accordingly, that the allegation of ownership in Nelson Lyle, followed by proof of ownership by himself and his wife, was sufficient under the common law. The variance between allegation and proof was not fatal.

### 3. Sufficiency of the Evidence

This issue is limited to the Pearson case. A jeweler in Laurel, Maryland testified that appellant and another came into his store in January, 1974 and "showed me the ring, told me that it had come from England by a merchant seaman, and wanted to sell it." The jeweler at first declined to purchase the ring but did so about a half hour later after the appellant had returned to the store alone "and assured [him] that the ring was all right." The jeweler made out a check for $300.00 payable to the appellant and then cashed the check for him. The jeweler then put the ring in his

---

5. Introduced to Maryland Law as Ch. 457 of the Acts of 1898.

display window. An accident of good fortune caused it to be observed by its owner, Danielle R. Pearson. She testified that the ring was included among jewelry taken after a break-in of her home in January, 1974. She said the ring had been appraised for about $800.00 but had a present value of $1200.00.

In *Anderson v. State,* 9 Md. App. 532, 267 A. 2d 296, it was said at 541 [301]:

> "* * * one in exclusive possession of recently stolen goods, in the absence of reasonable explanation can be found to be the burglar, the thief, or *if others are shown to be involved, the receiver.*" (Emphasis added)

In the course of cross-examination of the jeweler, personally conducted by the appellant, the following testimony was elicited:

> "Q What did I represent to you as to who owned the ring?
> A Well, you said it was his ring."

Thus the evidence clearly showed that another was involved. It was shown also that upon return to the jewelry store appellant was in exclusive possession of the ring.

There was evidence legally sufficient to convict in the Pearson case.

### 4. Prosecutor's Closing Argument

No objection was made during the course of the argument by the prosecution. The issue is not before us. Rule 1085. *Raimondi v. State,* 12 Md. App. 322, 278 A. 2d 664.

### 5. Restriction Upon Cross-Examination

We preface our comment by pointing out that although counsel had been appointed for the appellant and was at the trial table during the entire course of the trial, it was the appellant in proper person who, almost exclusively, conducted the interrogation of his own witnesses and the cross-examination of the witnesses offered by the State.

The essence of this contention is that the cross-examination of the witnesses Billingsley, Sarkas and Seminuk was so curtailed as to constitute denial of the right of confrontation under the Sixth Amendment as made applicable to the States by the Fourteenth Amendment. He cites *Davis v. Alaska*, 94 S. Ct. 1105, 415 U.S. 308, 39 L.Ed.2d 347, as supporting the contention.

The similarity between the subject case and *Davis v. Alaska* begins and ends with the claimed deprivation of a constitutional right. Factually they are poles apart. In *Davis*, the trial judge had refused to permit cross-examination of a State's witness who had claimed lack of concern over possible police suspicion and had categorically denied ever having been the subject of any similar law enforcement interrogation. The Supreme Court declared at 1109 [314; 352]:

"The witness was in effect asserting, under protection of the trial court's ruling, a right to give a questionably truthful answer to a cross-examiner pursuing a relevant line of inquiry; it is doubtful whether the bold 'No' answer would have been given by Green absent a belief that he was shielded from traditional cross-examination. It would be difficult to conceive of a situation more clearly illustrating the need for cross-examination."

It was in this factual context that the Supreme Court held at 1111 [318; 354]:

"On the basis of *the limited cross-examination that was permitted the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a 'rehash' of prior cross-examination.* On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw

inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which ' "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Brookhart v. Janis, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314.' Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968)." (Emphasis added)

In the subject case, on the other hand, the trial judge permitted lengthy, sometimes argumentative and frequently repetitious cross-examination of the witnesses to show the jury:

*From Billingsley*:

a. That the witness was an active participant with the accused in the commission of the Lyle offenses;

b. That the witness had been granted complete immunity as to his participation in the Lyle cases;

c. That the witness had a personal animus or bias against the accused.

*From Sarkas*:

a. That the witness had been charged with receiving three of the items stolen in the Lyle grand larceny case;

b. That at the instance of the State a stet had been entered with respect to the prosecution of Sarkas for receiving.

*From Seminuk*:

a. That the witness had a personal dislike for the accused:

b. That he had said, "[he] was going to make a career out of [Anglin]";

    c. That the witness had recommended giving complete immunity to Billingsley;

    d. That the witness thought that such attitude toward immunity to Billingsley formed part of his duty as a detective.

In sum, the record in the subject case affirmatively demonstrates that the trial judge patiently allowed a most extensive inquiry into the reliability of the State's witnesses such as would permit the jury to make an objective judgment as to the weight, if any, to be given to their testimony. We find no denial of a constitutional right to confrontation in this case.

On the contrary, our examination of the record persuades us that the trial judge permitted cross-examination to be conducted to or beyond the point where, in the exercise of a reasonable discretion, it might be halted. *Kable v. State*, 17 Md. App. 16, 31, 299 A. 2d 493, 501.

We perceive no error.

### 6. Restrictions Upon Direct Examination

Our examination of the record transcript shows that all objections interposed by the State in the course of the testimony of the defense witnesses Rhue, Hammond, McLoughlin, Sams, Cornwell and Ives properly were sustained by the trial judge. We find also that the State's objections to proffers as to the testimony of proposed witnesses Katz and Barnett were properly sustained. The record indicates no restriction upon the testimony of the witness McKinley.

The propriety of the trial court's rulings in the course of the testimony of the witness Vallario will be discussed in our comments upon appellant's point #7.

### 7. The Ruling as to Privilege

In the course of testimony by the State's witness Sarkas, he had said, *inter alia*, that in spite of the stet in the receiving case against him he felt that he still faced that charge. Sarkas had added that to his knowledge there was

nothing preventing the State from reopening that case; that there was no written or oral agreement to the contrary; and that no promise whatsoever had been made to him by his attorney, Mr. Vallario.

The defendant called as a witness, attorney Joseph F. Vallario, Jr., for the apparent purpose of attempting to show that some greater promise had been made to Sarkas by the State than the mere stetting of the case. At an early point in the course of Mr. Vallario's testimony, the State's attorney made a motion *in limine* to bar the testimony of Vallario. The motion was denied. In the subsequent course of Vallario's testimony, however, the trial judge had sustained the witness's claim of privilege for the following question:

"Q Was there any agreement with the State's Attorney who authorized and recommended a stet, any agreement with him relative to Mr. Sarkas' testimony against me here today? "

We are persuaded that the answer to that question would not be within the attorney-client privilege. It was error to sustain the objection. 8 Wigmore Evidence, § 2317 (McNaughton rev. 1961); *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 18, 174 A. 2d 768, 773-74.

We believe, however, that the error became harmless beyond a reasonable doubt by reason of subsequent testimony given by the witness without claim of privilege. The record shows the following:

"Q Mr. Vallario, bearing in mind the nature of the stet docket, do you know of anything which would prevent the State from prosecuting [Sarkas] tomorrow, do you understand my question?
A Well, I would say the State would have a perfect right to bring the charges."

The record also includes, in further direct examination by trial counsel for appellant, the following:

"Q * * * If the State has agreed prior to the

placing on the stet docket that they will not prosecute after it has been placed on the stet docket can they thereafter prosecute?

A There is some law to the effect that if there is an agreement between the State not to prosecute a case that they cannot prosecute. Without going further, looking into it, I am not sure, I am really not sure. I never had one prosecuted."

In the light of the later evidence, we do not view the error as having produced prejudice to the accused.

## 8. The Sentences

### a. Prior Convictions as Affecting

A presentence report had been made by the Department of Parole and Probation. Appellant, furnished a copy of that report, described it as "replete with many, many errors." As to the F.B.I. record attached to the report, appellant said "* * * it is unbelievable. I deny the entire record." Nonetheless, the prosecutor, without the offer of any other proof of convictions, said to the trial court: "Mr. Anglin's criminal record began before I was born. It began right here in this county in 1945 and come a full circle since then. The stop overs in Washington, D. C., Anne Arundel County, Baltimore, Rockville, House of Corrections in Jessup, Las Vegas, Reno, Dallas, Birmingham, Alabama, Lewisburg, Pennsylvania, Canton, Ohio, San Francisco, Carson City, Nevada and Hollywood, Florida."

Thereafter, the appellant further said to the court:

"I would again reiterate, I don't have any record. There is no proof on the part of the State's Attorney that I was represented by a lawyer in each one of these [convictions] * * *."

In *Carroll v. State*, 19 Md. App. 179, 310 A. 2d 161, we discussed decisions by this Court following the landmark cases of *Burgett v. Texas*, 389 U. S. 109, 88 S. Ct. 258, 19 L.Ed.2d 319, and *United States v. Tucker*, 404 U. S. 443, 92 S. Ct. 589, 30 L.Ed.2d 592, relating to the use at sentencing of

prior convictions obtained in violation of the fundamental right to counsel. In *Carroll,* we said: (184-85 [164])

"We pointed out in both *Johnson, supra,* and *Moore, supra,* that the burden is on the State to establish by 'clear and convincing evidence that the defendant's constitutional right to counsel was not infringed at the prior proceeding.' The procedure that we spelled out in *Johnson, supra,* and reiterated in *Moore, supra,* was not intended to be a guide, that may or may not be used, but was enunciated and promulgated for the Bench and Bar to follow."

In *Moore v. State,* 17 Md. App. 237, 300 A. 2d 388, we had said: (242-44 [391-92])

"We did three things in *Johnson,* which we decided 17 March 1970. First, we held that 'the *Burgett* principle serves to exclude evidence of a prior conviction offered for the purpose of impeaching the credibility of an accused testifying on his own behalf when it is established that such conviction was obtained absent representation by counsel or a valid waiver thereof.' 9 Md. App. at 175. Second, we held that 'it is incumbent upon the defendant, when his objection to evidence of a prior conviction is on the ground that the conviction was constitutionally void to state his reasons to the court to enable it properly to determine the issue.' *Id.,* at 177. Third, we enunciated the procedure to be followed to invoke the exclusionary rule. When the defendant objects to evidence of prior convictions under the *Burgett* principle, the court shall conduct a hearing. 'At the hearing the State shall first have the burden of producing evidence of a prior conviction, unless admitted by the defendant, sufficient to justify a finding by the court that the defendant has suffered such previous conviction . . . When this showing has been made the defendant must produce evidence tending to

establish that his constitutional right to counsel was infringed in the prior proceeding at issue . . . The burden is then upon the State to prove by clear and convincing evidence that the defendant's constitutional right to counsel was not infringed at the prior proceeding . . . The court shall make a finding on the basis of the evidence thus produced and shall exclude from the trial on the merits any prior conviction found to be constitutionally invalid. Any conviction found to be constitutionally valid shall be admitted in evidence . . .' *Id.*, at 177-78. This procedure is to be followed whenever the *Burgett* principle is invoked to exclude evidence of a prior conviction, whether such conviction is to be used to support guilt or to enhance punishment for another offense.

"Our holding as to the first matter proved to be right. In *Loper v. Beto,* 405 U.S. 473, decided 22 March 1972, the Supreme Court said, at 483: 'Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law.' Our holding as to the second matter proved to be wrong. In *Bailey v. State,* 263 Md. 424, decided 12 November 1971, the Court of Appeals discussed *Johnson* and said that under Rule 522 d 1 it is not necessary to state grounds for objections to evidence unless requested by the court. It saw no room in the Rule or in the decisions for making the distinction we made as to stating grounds of objection when the *Burgett* principle was applicable. 263 Md. at 428. As to the third matter, we see nothing in *Bailey* to indicate that the procedure we set out in *Johnson* is improper or is to be discarded. We affirm that it is to be followed when it becomes known that objection to evidence of a prior conviction is grounded on *Burgett.*"

In the subject case the trial judge did not conduct the hearing mandated by our decisions in *Johnson, Moore* and *Carroll, supra.* Thus, unless the record affirmatively demonstrates that the prior convictions were not used by the trial judge to enhance punishment, we must vacate the sentence and remand the case for resentencing.

The trial judge, in the course of comments prior to sentencing said, *inter alia*:

> "But, I really don't have to put any credibility to this F.B.I. report because I think what you said to me today, about your own activities indicates the type of person I am dealing with in this sentencing proceeding.

> \* \* \*

> "So, I don't really need to consider the written report of alleged offenses committed by you in determining what sort of person I'm dealing with and what sort of sentence I ought to impose, because I think the problem is far deeper than individual commission of an individual crime."

Those comments by the trial judge had been made after Anglin had been allowed allocution extending over more than forty-five minutes.

The trial judge then imposed consecutive sentences of ten and fifteen years for the burglary and grand larceny offenses and ten years concurrent for the receiving stolen goods offense.

We believe that this record demonstrates affirmatively that prior possibly infirm convictions were not used to enhance punishment. We find no *Burgett, Tucker* constitutional impediment in the sentences.

### b. Due Process and Equal Protection

In *Lipscomb v. State*, 5 Md. App. 500, 248 A. 2d 491, we said at 506-07 [494-95]:

> "It is well settled that imposition of sentence in a

criminal case in this State is a matter peculiarly within the province of the trial judge, *Reid v. State,* 200 Md. 89, *Gee v. State,* 2 Md. App. 61; and that a sentence within limits prescribed by law will be reviewed on appeal only where grossly and inordinately disproportionate to the offense to such an extent that the sentence was evidently dictated not by a sense of public duty, but by passion, prejudice, ill will, or other unworthy motive. *James v. State,* 242 Md. 424, *Fisher v. State,* 1 Md. App. 505.

"The sentence imposed was within statutory limits, and there is no showing that it was prompted by any unworthy motive on the part of the trial judge."

Here, also, the sentences imposed were within statutory limits. There is no evidence tending to show that the sentences were influenced by an unworthy motive.

The sentences were not disproportionate to the offenses and are valid.

*Judgments affirmed.*