Robert ROBERTS, Appellee,

v.

George COLLINS, Warden, Maryland Penitentiary, Appellant.

Robert ROBERTS, Appellant,

v.

George COLLINS, Warden, Maryland Penitentiary, Appellee.

Nos. 76–1080, 76–1081.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1976.

Decided Oct. 28, 1976.

Phillip G. Dantes and Michael Millemann, Baltimore, Md. [both Court-appointed counsel], for Robert Roberts; Peter S. Smith, Baltimore, Md., Katherine Lewis and Joel A. Smith, Law Students, on brief.

James G. Klair and Bruce C. Spizler, Asst. Attys. Gen. of Md., Baltimore, Md., for George Collins.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.*

PER CURIAM:

Sentenced in a state court to two successive terms of twenty years each upon pleas of guilty to two charges of simple assault, the defendant asserted a denial of his Eighth Amendment rights, derived through the Fourteenth Amendment, to be free of cruel and unusual punishment. The district court held the sentences invalid to the extent that they exceed the statutory maxi-

* Sitting by designation.

mum of fifteen years which may be imposed upon a conviction of assault with intent to murder. *Roberts v. Collins,* D.C. Md., 404 F.Supp. 119. On appeals by both parties, we affirm.

Stopped for a traffic offense, Roberts was instructed to enter a police patrol car. While in the act of doing so, he shot one of the policemen in the shoulder and clubbed the other in the back of the head with a pistol. Out of the entire incident there arose a number of charges, including a separate charge of assault with intent to murder each of the policemen and a separate charge of simple assault upon each policeman. At the time, assault with intent to murder was a statutory crime in Maryland with a maximum sentence of fifteen years.[1] Simple assault was a common law crime with no maximum sentence.

Roberts agreed to enter guilty pleas to several counts of each indictment, including the charge of simple assault. The judge imposed a sentence of twenty years upon him upon each of the assault charges, the sentences to run consecutively. Other sentences upon other offenses were also to run consecutively, so that the total term of imprisonment imposed was fifty-four years.

We think we need add little to what was said by the district court. Simple assault, indeed, is a lesser offense than assault with intent to murder, and may not constitutionally subject one to greater punishment than that which may be lawfully imposed upon one convicted of assault with intent to murder.

Assault with intent to murder is a heinous crime. It is a lesser offense than actual murder only because the victim survives; it becomes murder if the victim dies in consequence of his wounds. To convict Roberts of assault with intent to murder each of the policemen, Maryland would have been required to prove in each instance, in addition to the shooting and clubbing, that death was not an unlikely consequence of Roberts' acts and that the acts were done under such circumstances and

1. Md.Code Ann., Art. 27, § 14 (1951).

with such intention that, had each of the policemen died, the slayings would have constituted the crime of murder rather than manslaughter or, indeed, if self-defense were established, no crime at all. Roberts could have been convicted of simple assault without proof that the lives of the victims were put in jeopardy and without proof of the specific intention requisite for a conviction of murder. A conviction of simple assault requires proof of nothing which is not requisite to proof of guilt of assault with intent to murder; it requires less proof, not more, to convict for simple assault.

■ When, to relieve the state of the burden of proving all elements of the greater offense of assault with intent to murder, a defendant tenders a plea to the lesser included offense of simple assault, he ought not to be held to have exposed himself constitutionally to greater punishment. In *Hart v. Coiner,* 4 Cir., 483 F.2d 136, 140, relying upon *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), we held that punishment for crimes should be graduated and proportioned to the offense. Exact balances may not be attainable between unrelated offenses, but the Constitution does not sanction the imposition of a greater punishment for a lesser included offense than lawfully may be imposed for the greater offense.

■ For such reasons and for those fully discussed in the opinion of the district court, we think it correctly concluded that the assault sentences imposed upon Roberts, to the extent they exceeded fifteen years each, amounted to the imposition of cruel and unusual punishment and were invalid. We find no infirmity in the conclusion that each of the sentences does not offend the Constitution and were valid to the extent that each did not exceed fifteen years, the maximum which might be imposed for assault with intent to murder.

There is an alternative contention by Roberts on his cross-appeal that the guilty pleas were involuntary because he "was not aware that common law assault carried no maximum penalty in Maryland." After

concluding that there was a constitutionally required maximum penalty of fifteen years, the district court found it unnecessary to reach this alternative contention. We do not reach it for the same reason, for nowhere does Roberts contend that he was informed and reasonably understood that there was a maximum penalty of less than fifteen years. Should there be a factual basis for such a contention, this decision will not foreclose its assertion in subsequent post-conviction proceedings.

*AFFIRMED.*

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals (dissenting).

With total respect and deference, and fully aware that dissents are normally devoid of either parentage or progeny, I find myself unable to agree with my distinguished colleagues.

My primary difficulty with the decision below and with the majority opinion is three fold:

(1) They rest upon a rationale arising from the initial presence of a charge of assault with intent to murder and not upon an interrelationship of the crime, the criminal and the punishment.

(2) The holding that no sentence for any common law assault may constitutionally exceed that prescribed by statute for assault with intent to murder leads to an incongruous result in this case. The Maryland Legislature has raised the maximum penalty for the statutory crime of assault with intent to murder from 15 to 30 years. Art. 27, § 12, *Annotated Code of Maryland*, Chap. 858, § 1, Act of 1975. The reasoning below, and that of the majority here, would thus find a 20 year sentence for common law assault constitutionally proscribed as cruel and unusual in 1953, but not today, after 23 years of "evolving standards of decency." See *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

(3) They cast the federal courts in the legislative role of fixing a maximum sentence for common law crimes.

These are cross-appeals from the judgment[1] of the United States District Court for the District of Maryland ordering that two 20-year prison sentences, imposed in 1953 by the Criminal Court of Baltimore on Robert Roberts (petitioner), each be reduced by five years and otherwise denying the petition for a writ of habeas corpus. I would reverse and remand with instructions allowing the original sentences to stand.

## Issues

The issues are: (1) whether the district court erred in concluding that petitioner's sentences constituted cruel and unusual punishment prohibited by the Eighth Amendment; (2) whether petitioner's sentences violated Fourteenth Amendment guarantees of due process and equal protection; and (3) whether acceptance of petitioner's guilty plea violated the Fourteenth Amendment guarantee of due process.

## Background

Between 1938 and 1953 petitioner was convicted of some 18 to 20 charges. The charges of 1953 arose from events which occurred when petitioner was arrested for driving without a license. In getting into the police car, petitioner shot a first police officer and clubbed a second in the back of the head with a pistol. He was charged with [2] (1) assault with intent to murder, (2) common law simple assault, and (3) assault on a police officer.[3] Petitioner, represented by privately retained and selected counsel, pled guilty in the Criminal Court of Baltimore to two counts of common law simple assault on March 3, 1953.[4] After a hearing, at which testimony was received from petitioner and others in relation to the guilty pleas, Judge Carter sentenced petitioner to two 20-year prison terms, one on each count of common law simple assault.

Petitioner took no appeal. He has, however, petitioned the Maryland State Courts on at least seven occasions,[5] and the Federal District Courts on five occasions,[6] unsuc-

1. *Roberts v. Collins*, 404 F.Supp. 119 (D.Md. 1975).

2. He was also charged with being a rogue and vagabond, possession of a deadly weapon, and larceny (automobile) and was sentenced to two, two and ten years respectively. His conviction and sentences on these charges is not before us. The reference to "fifty-four years" in the majority opinion would thus appear extraneous, as would the fact that the majority's reduction still leaves petitioner with a total imprisonment of 44 years.

3. The Maryland Court of Appeals has since commented that there is no statutory crime specifying assault on a police officer, as distinct from assault on anyone else. *Roberts v. Warden*, 206 Md. 246, 111 A.2d 597 (1955).

4. Though the majority opinion states that Roberts "agreed" to enter guilty pleas and infers that Roberts tendered his pleas "to relieve the state of the burden of proving all elements of the greater offense," I can find no indication in the record or the briefs of any plea bargain, agreement or intent of Roberts to relieve the state of any burden. I cannot presume, from the fact of a reduced state burden, that such was the intent of Roberts.

5. See *Roberts v. Warden*, 206 Md. 246, 111 A.2d 597 (1955); *Roberts v. Warden*, 214 Md. 611, 135 A.2d 446 (1957), *cert. denied*, 355 U.S. 966, 78 S.Ct. 556, 2 L.Ed.2d 540 (1958); *Roberts v. Warden*, 221 Md. 576, 155 A.2d 891, *cert. denied*, 362 U.S. 953, 80 S.Ct. 866, 4 L.Ed.2d 871 (1959); *State of Maryland ex rel. Roberts v. Warden*, P.C. Petition No. 313 (Criminal Court of Baltimore 1961); *State of Maryland ex rel. Roberts v. Warden*, No. 351–15 (Baltimore City Court 1963); *Roberts v. Warden*, 242 Md. 459, 219 A.2d 254, *cert. denied*, 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966); *State of Maryland ex rel. Roberts v. Warden*, P.C. Petition No. 313 (Criminal Court of Baltimore 1967), *applic. for leave to appeal denied*, 4 Md.App. 740 (1968).

6. *Roberts v. Pepersack*, Memorandum Opinion of Judge Chesnast (D.Md. Apr. 8, 1958); *Roberts v. Pepersack*, 190 F.Supp. 578 (D.Md. 1960), *aff'd*, 286 F.2d 635 (CA4 1960); *Roberts v. Warden*, Civil No. 10,479 (D.Md.1962), *certificate of probable cause denied*, Civil No. 10,479 (CA4 1962); *Roberts v. Warden*, Civil No. 10,-479 (D.Md.1964), *aff'd*, No. 9663 (CA4 1964); *Roberts v. Warden*, Civil No. 10,479 (D.Md. 1967) *aff'd*, No. 11,201 (CA4 1967).

cessfully challenging his sentences in each instance. Thus the present petition for habeas corpus is petitioner's thirteenth effort to undo the effect of the courtroom events of March 3, 1953.

Several years ago, petitioner was released on parole but soon violated its terms and was recommitted. He is currently confined at the Maryland State Prison.

### The Analysis Below

The district court concluded that a sentence greater than the statutory maximum for assault with intent to murder was cruel and unusual, and thus violative of the Eighth Amendment, when imposed for a crime of common law simple assault.

Although this court in *Roberts v. Warden*, No. 11,201 (CA4 1967), had previously held itself bound by a Maryland Court of Appeals decision that petitioner's punishment was authorized under Maryland law, the district court considered that the "ends of justice," *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), required it again to consider the question, and that the concept of "cruel and unusual" had more recently been so judicially developed in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), *Hart v. Coiner*, 483 F.2d 136 (CA4 1973), *cert. denied*, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974) and *Ralph v. Warden*, 438 F.2d 786 (CA4 1970), *cert. denied*, 408 U.S. 942, 92 S.Ct. 2846, 33 L.Ed.2d 766 (1972), as to necessitate an application of current law to petitioner's sentences. The court's analysis involved consideration of the four factors set forth in *Hart* and an added fifth factor gleaned from concurring opinions in *Furman* and from *Ralph*.

Applying the first factor, "nature and gravity of the offense," the district court recognized that petitioner's crimes were serious but downgraded their seriousness by comparison of "simple assault" with the statutory crime of assault with intent to murder charged by the prosecution. Having cited *Marks v. State*, 230 Md. 108, 185 A.2d 909 (1962), *cert. denied*, 373 U.S. 918, 83 S.Ct. 1308, 10 L.Ed.2d 417 (1963), for the proposition that "simple assault" was a lesser-included offense within that of assault with intent to murder, the district court reasoned:

> Nevertheless while [petitioner's] was a crime of the most serious sort, the greatest offense charged by the prosecution—assault with intent to murder—was deemed by the Legislature of the State of Maryland to warrant a maximum penalty of 15 years confinement. * * * But in petitioner's case by the simple expedient of accepting a guilty plea to a lesser-included offense, the court was able to circumvent the legislative judgment as to the maximum penalty for the more serious offense and impose a greater sentence for the lesser-included offense. There is then, in the context of this case, a serious question whether "the nature and gravity of the offense" to which the petitioner pleaded guilty could justify the abnormally longer sentences.

The court noted the perplexing fact that the state legislature had left sentencing for "simple assault * * * exclusively to the trial judge" while prescribing penalties for certain other crimes which the court considered more serious and which the court listed in the opinion below.

With admirable candor the court stated, "The second factor identified in *Hart v. Coiner, supra,* is the legislative purpose behind the penalty. Here, the legislative purpose—if there was any—in not proscribing a maximum penalty for simple assault, while doing so for specific aggravated forms of assault, cannot be divined by this court."

Correctly terming "circular and fruitless" a pursuit of the third factor, comparison of the (non-existent) maximum penalty for simple assault in Maryland against maxima in other states, the court arrived at the fourth factor, a comparison with other maximum Maryland sentences for comparable statutory crimes, finding it "most informative." Noting that petitioner's sentences were greater than the maximum prescribed by statute for each of seven listed crimes,

the court concluded that petitioner's sentences were "truly extraordinary."

Unable to locate a single Maryland case in which a sentence of 20 years was imposed for simple assault,[7] the court concluded that petitioner's penalty was so rare and severe that its imposition upon petitioner met the added fifth factor, "arbitrariness," referred to in *Furman v. Georgia, supra,* and in *Ralph v. Warden, supra.* The district court arrived at this conclusion:

> From this analysis, the court concludes that the 20-year sentences for the lesser-included offense of simple assault where the maximum penalty for the more aggravated offense of assault with intent to murder was 15 years is cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. Furthermore, the court is of the opinion that only that portion of the sentence which exceeds 15 years is unconstitutional.

Thus the analysis below rested on three of the five listed factors. The district court: "questioned" whether a "lesser included" offense could have a "nature and gravity" serious enough to justify the sentences when lesser sentences were provided for equal or more grave offenses; set aside "legislative purpose" as unknowable and "comparison with other states" as fruitless; found "comparison with other crimes in Maryland" informative; and found rarity of the penalty indicative of arbitrariness. It is clear, however, that the controlling element in the analysis below was, as it is in the majority opinion here, the fact that petitioner had been charged with a statutory crime considered by the court as greater than the common law crime to which petitioner pled guilty and yet the penalty imposed exceeded the maximum prescribed for that "greater" statutory crime.[8]

The district court found it unnecessary to reach the Fourteenth Amendment contentions of petitioner.

## DISSENTING OPINION

I agree with the learned trial judge that judicial development in the area of cruel and unusual punishment justified review of the petition. I agree also, of course, with the exposition of applicable law in *Furman, Hart* and *Ralph, supra.* I would hold, however, that those authorities do not require the result reached below. Though I disagree with the trial judge's conclusion that the imposition of petitioner's sentences was unconstitutional, I join him in considering incongruous and disconcerting the general proposition that a common law crime labeled "simple assault" in Maryland may carry a greater penalty than the statutorily labeled crime "assault with intent to murder," as this court said in *Roberts v. Warden, supra.* The incongruity, however, lies primarily in the context of legislative housekeeping, terminology employed in designating offenses, difficulty of foreseeing and accurately describing all possible offenses, and the fact that petitioner was charged herein with both statutory and common law offenses. But a disconcerting incongruity should not in itself control determination of whether a particular punishment is cruel and unusual when imposed upon a particular criminal guilty of a particular criminal act.[9]

---

7. The court apparently overlooked *Adair v. State*, 231 Md. 255, 189 A.2d 618 (1963).

8. The district court found "a certain plausibility" in petitioner's hypothetical and once more repeated argument that, if his sentences were upheld, prosecutors could obtain imposition of greater sentences by attempting to prove only a lesser-included offense and the defense would of necessity attempt to prove that defendant committed the more aggravated offense. Considering that "situation" to be "arbitrary, anomalous, and irrational," the district court stated that "The question, however, is whether it is also unconstitutional in this case." I take the district court's statement to mean that the question is whether petitioner's punishments were unconstitutional, not that the hypothetical situation itself is on trial, which of course it is not.

9. We are not, of course, faced here with imposition of punishment for violation of a statute or with comparison between punishments provided by statute, as was the case in *Furman v. Georgia, Hart v. Coiner,* and *Ralph v. Warden, supra.*

*Prior Consideration by State Courts*

The Maryland courts have on numerous occasions considered the legality of Roberts' sentences and their constitutionality under both the Maryland and federal constitutions. I accept the Maryland courts' determination that the punishments in question are legal, valid punishments under the laws of Maryland. They are, nonetheless, subject to review in the light of the Eighth and Fourteenth Amendments. In the conduct of that review, they must be accorded, as legal punishments, a presumption of constitutional validity. *Gregg v. Georgia,* —— U.S. ——, ——, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

The judges of the Maryland Court of Appeals and of the other Maryland courts which reviewed the federal constitutionality of petitioner's sentences are no less qualified than we to interpret the Eighth and Fourteenth Amendments. Though I agree with the district court's statement that their interpretation cannot bind a federal court, I view that interpretation as one entitled to great deference. Petitioner violated a state law, was sentenced by a state judge, petitioned numerous times to state courts and is currently serving in a state penitentiary. Absent a clear violation of the Constitution, federal courts should not annul the decisions of learned state judges regarding a petitioner's claim that his Eighth and Fourteenth Amendment rights had been infringed.

*Lesser v. Greater Crimes*

At the threshold, I do not agree that petitioner's particular crimes were "lesser-included offenses" within the crime statutorily labeled "assault with intent to murder." It is for the Maryland Legislature to designate greater and lesser crimes within the criminal law of Maryland. As above indicated (see note 9) we are not here faced with a comparison of punishments for crimes which the legislature has itself codified, as were the courts in the cases relied upon below. Because of the vast array of offenses which may come under the heading "common law assault," I cannot say that every offense thereunder is a "lesser included" crime within "assault with intent to murder." That proof of more elements is required for conviction does not, in my view, render a particular criminal act in every case a "greater" crime inclusive of another.

Of the almost unlimited myriad of possible assaults conceivably describable as "common law simple assaults," the Maryland Legislature carved out some, including assault with intent to murder, and made them statutory crimes. All other common law assaults, though labeled "simple," [10] did not thereby, and solely because of that legislative action, necessarily become lesser than or included within assault with intent to murder, nor did all such other common law assaults thereby acquire an automatic sentence limitation. In *Marks v. State, supra,* defendant claimed he accidentally touched his son's shirt with a cigarette. There was other testimony that he used a match. The Maryland court, applying Maryland's "same transaction" rule, voided a judgment based on assault to "kill and murder" and assault and battery and sustained a judgment based on assault with intent to maim. In so doing, it considered assault and battery as simple assault and the lesser of two crimes on which defendant was convicted for the same act, held that it "merged" with assault with intent to maim and sustained the concurrent 10 year sentence imposed.

But if the crimes here charged were "lesser" crimes than assault with intent to murder, there is no requirement that crimes at various levels within a category receive

---

**10.** Labeling petitioner's crimes "simple assault" and comparing that *label* to statutory crimes bearing more specific and serious-sounding labels may be misleading. For example, at least one of the statutory crimes listed below, "mayhem, tarring and feathering" (maximum, 10 years), Art. 27, 1951 *Annotated Code* of Maryland, § 451, sounds a more serious crime than does "simple assault," but petitioner's actual crimes, which were before the sentencing judge, when specifically described, would appear to exceed in gravity and violence that statutory crime when only the statutory label of the latter is known.

punishment at corresponding levels, *i. e.*, that so-called "lesser" crimes must in all cases receive "lesser" penalties. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

### The Common Law

Statutes alleged to be in derogation of the common law must be strictly construed. *Anglin v. State*, 28 Md.App. 150, 344 A.2d 130 (1975) and cases cited therein. The legislative definition of a statutory crime only changes that much of the common law as it expressly or necessarily replaces. Petitioner pled guilty and was sentenced for violation of the common law, not for violation of one of the statutory exceptions thereto. It cannot be presumed that legislative provision of specific penalties for commission of some statutory assaults altered the permissible penalties for commission of assaults remaining within the common law. *Gleaton v. State*, 235 Md. 271, 201 A.2d 353 (1964). Here the legislative prescription of a 15 year maximum prison term for assault with intent to murder creates no implication of any legislative intent concerning penalties for crimes remaining untouched in the common law. If any implication must be read into a legislative failure to prescribe maximum penalties for common law crimes, while doing so for other "more serious" crimes, that implication must necessarily be one of intent to leave matters as they were with respect to penalties for common law crimes.

The district court recited that "no supporting reason has been suggested by either side" for that legislative failure, and that "[i]t certainly cannot be argued that the legislature wanted to leave flexibility in the courts to cover some form of assault not covered by the compendium of horrors for which it did provide penalties." I do not, however, find it surprising that no reasons are suggested for legislative *non*-action, and I think it can be argued, nay, presumed, that a legislature that did in fact leave such broad flexibility in the courts wanted to do just what it did. Its wisdom in wanting to do so is not, of course, a matter for the courts.

Nor is the constitutionality of legislative non-action with respect to some common law crimes an issue before us.[11] We need not, therefore, attempt to divine the legislative purpose behind the action of the legislature in leaving the penalty for common law assault to the discretion of the sentencing judge, restrained only by the constitutional prohibition against cruel and unusual punishment. We should not, in the guise of a super-legislature, set the maximum penalty for common law assault at the 15 years statutorily provided for assault with intent to murder, or at the 10 year maximum statutorily set for mayhem, or at any other statutory maximum set for crimes for which petitioner might have been charged.[12] Our function is limited to determination of the constitutionality of the sentences imposed in the exercise of lawfully provided judicial discretion in this case.

There being no statutory limit on the penalty which may be imposed for common law assault, *Glass v. State*, 24 Md.App. 76, 329 A.2d 109 (1974), the sentencing judge in Maryland, who sees and hears the accused

11. Petitioner's brief before us contains a scholarly attack upon the discretionary sentencing power of judges which under the common law in Maryland and the three other states which have not yet totally codified all crimes or provided fixed penalties therefor, in support of the view that this court should fill the legislative gap. Attractive and persuasive as petitioner's arguments are, they are in my view addressed to the wrong forum.

12. If we are to set maximums, why set that for "simple assault" at 15 years? Why not select the more common maximum of 7 years? If 15 years be permissible in Maryland, what of other states whose statutory maximum for intent to murder is less? The statutory maximum for intent to murder varies among the states from 5 years to life imprisonment. If it be unconstitutional to impose a sentence greater than the maximum for intent to murder, why is it not also unconstitutional to impose a sentence equal to the 1953 maximum for the "greater" crime? If one accused of simple assault and mayhem should plead guilty to simple assault in future, would not a 15 year sentence unconstitutionally exceed the 10 year maximum for the "greater" crime of mayhem?

and other witnesses and personally evaluates their demeanor, must have discretion, within constitutional bounds, to adapt the penalty to the crime and to the individual criminal in light of his past offenses, attitude of remorse or truculence, character, and like-considerations, and to fashion the penalty within the panorama of circumstances surrounding the offender and the crime. Consideration of all mitigating and aggravating circumstances tends to ensure that the punishment is truly proportionate to the crime. See *Gregg v. Georgia, supra,* —— at ——, 96 S.Ct. 2909.

### (1) *Eighth Amendment*

At base, the determination of whether a punishment is "cruel and unusual" is but a determination of whether the punishment is disproportionate, under the circumstances, to the crime. "Let the punishment fit the crime" is not an idle phrase, in my view, in the light of the Eighth Amendment. I would, therefore, determine the cruel and unusual issue without regard to the happenstance of the presence or absence of other charges which were or might have been brought against petitioner. Less difficulty would arise with a holding that a 20 year sentence for shooting a policeman constituted cruel and unusual punishment than arises from a holding that no sentence for any common law crime may exceed statutory sentences provided for some "greater" crime.

The four "factors" set forth in *Hart v. Coiner, supra,* are useful semantic tools, descriptive of the process of measuring the "fit" between the crime and the punishment.[13] The "nature and gravity of the offense" tells us what the punishment is to be fitted to. Determining the "purpose of the legislature" (i. e., in fixing punishment for statutory crimes) or, as here, the "purpose of the sentencing judge," assures us that the purpose is to fit punishment to crime and not to seek revenge or to achieve some other unworthy and thus "cruel" purpose.[14] "Punishments for the same crime in other jurisdictions," and "punishments for other crimes within the same jurisdiction" are factors related to the "unusual" element of the constitutional phrase, but that inquiry also provides insight as to what punishment may "fit" under current social standards.

Petitioner's crimes involved physical violence, mortal danger to the victims and grave moral culpability. Shooting one police officer and clubbing a second during an arrest for a traffic violation is wanton violence out of all proportion to the surrounding context. Such actions evidence a total disregard for the physical safety and basic human rights of others. Though Maryland does not distinguish between shooting a police officer and shooting others (see note 3, *supra*), the effect of petitioner's crime upon society is heightened by its having victimized official representatives and servants of society, i. e., police officers, carrying out

**13.** The "arbitrary" considerations of the *Furman* concurring opinions were not applied by the majority in *Gregg v. Georgia, supra,* perhaps because the discussion of arbitrariness in *Furman* concerned "excessive" (cruel) and "infrequent" (unusual) punishment. That circularity would thus not appear of great aid in determining whether a particular punishment was constitutionally prohibited because it was "cruel" (excessive) and "unusual" (infrequent). The concurring discussions in *Furman* may therefore have been considered by the majority in *Gregg* as reminiscent of the observation of Mr. Justice Story in *Briscoe v. Bank of Kentucky,* 36 U.S. (11 Pet.) 257, 347, 9 L.Ed. 709 (1837), that "There is no magic in words."

**14.** The "nature and gravity of the [punishment]" would seem an appropriate additional "factor." Our society having settled, essentially, on fines, probationary supervision and incarceration as the only generally acceptable forms of non-capital punishment, the vast majority of such inquiries would appear to involve the relationship among the three forms, the amounts of differing fines, the varying lengths and stringencies of probations, and the differing periods of incarceration, all considered in the light of the totality of circumstances surrounding the criminal and the crime. Though the district court referred to use of "the simple expedient of accepting a guilty plea to a lesser-included offense" by the sentencing judge "to circumvent the legislative judgment," nothing of record establishes any such intent on the part of the sentencing judge and I would presume none.

their imperative societal functions. Whether the shooting here involved resulted in assault or homicide depended, on the record before us, entirely upon the chance manner in which the bullet penetrated the first victim's body, i. e., whether it by-passed or destroyed a vital organ. Similarly the pistol clubbing of the second victim could have resulted in death or paralysis. The nature and gravity of petitioner's crimes may, in the light of all the circumstances, be characterized as severe.

Absent evidence to the contrary, it may be assumed that the purpose of the judge-imposed punishments herein was one of deterrence and the protection of society. To "fit the crime" a punishment must, of course, also fit the criminal, as differing penalties for first and repeated offenders have so long illustrated. Mild sentences would, from all known circumstances, have had little or no deterrent effect upon petitioner. Petitioner's prior convictions on 18–20 charges and his violation of parole illustrate his inability to resist asocial temptations. The penalty herein insulated petitioner for a longer time from his clearly established propensity toward the commission of crimes against society. Though the length of the sentences may on cold review seem harsh, I cannot say that petitioner's punishment was so ill fitting as to be cruel and unusual in the constitutional sense.

In comparing punishments for similar crimes in other jurisdictions and for related crimes in Maryland, we must continue to look at the crime itself, not just at its *title*, mindful that sentencing authorities are required, in modern practice, to consider all mitigating and aggravating circumstances including the offender's propensity to commit future crimes, *Jurek v. Texas*, —— U.S. ——, ——, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), as well as all other aspects of the offender's character and record in light of all of the circumstances surrounding the particular offense, *Woodson v. North Carolina*, —— U.S. ——, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

To overcome the presumption of constitutionality, petitioner must do more than submit a list of statutes and statutory punishments. He must show how similar criminal acts in similar circumstances by criminals of similar character and record have been or would be punished. In the present case, all surrounding circumstances are aggravating—none is mitigating—and petitioner has shown no evidence that the particular criminal acts involved herein, committed in similar circumstances by a person of similar character and record, have been or would be punished less severely in other jurisdictions or in Maryland.

As above indicated (see note 10), that lesser punishments may have been statutorily provided for different crimes, the titles of which may sound more serious than the broadly indefinite and encompassing title, "common law simple assault," cannot be controlling. Courts must bear in mind that a decision holding a given punishment for a given crime impermissible under the Eighth Amendment may frustrate the ability of the people to express their preference through normal democratic processes. *Gregg v. Georgia*, supra at 5236. I cannot say that the prison terms challenged by petitioner are so excessive as to constitute cruel and unusual punishment and that the people, the legislature, and the judiciary of Maryland should be forever prohibited from authorizing or imposing 20 year terms under similar circumstances.

I would hold, therefore, that petitioner's sentences were not violative of the Eighth Amendment.

### (2) *Fourteenth Amendment*

In view of the holding below and its affirmance here, neither the district court nor the majority here reached Fourteenth Amendment questions. Those questions are directed, however, to legal issues determinable on a record devoid of fact questions. Because the same record is before us, we are in as good position as the district court might have been to resolve the Fourteenth Amendment issues. In the interest of judicial efficiency and the conservation of scarce judicial resources, I would elect to do so.

Petitioner contends that because the sentences imposed were greater than those provided by statute for "more serious" crimes they violated the equal protection and due process clauses of the Fourteenth Amendment. As above indicated, I would find no merit in that contention.

In discharging his duty of imposing a proper sentence, as again indicated above, the sentencing judge must consider all the circumstances, mitigating and aggravating, involved in the crime, including the convicted person's past conduct and moral propensities. *Williams v. Oklahoma*, 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York, supra.* In light of the many aggravating circumstances of petitioner's crimes, as discussed above, we cannot say that Judge Carter was totally unreasonable in imposing the legally permissible sentences herein. Because of the many considerations which go into fitting the punishment to the crime and the criminal, the Fourteenth Amendment does not require every offense in a like category to carry the same punishment without regard to the past lives of different offenders or without regard to differing natures of the particular crimes involved. *Williams v. New York, supra*, 337 U.S. at 247, 69 S.Ct. 1079. The need for flexibility renders inappropriate the rigid view that every so-called "lesser crime" must in every case result in a lesser sentence. Neither the equal protection clause nor the due process clause of the Fourteenth Amendment, in my view, affords petitioner any relief from the sentencing judge's lawful exercise of his reasonable discretion in fitting the penalty to this offender and to these crimes.

### (3) *The Plea*

Petitioner alleges a violation of the Fourteenth Amendment in the acceptance of a guilty plea not made voluntarily because he was not aware that common law assault carried no maximum penalty.

Of course the due process clause of the Fourteenth Amendment requires that a guilty plea be made intelligently and voluntarily. Because *res judicata* is not applicable to habeas corpus proceedings, the present petition is not barred by the numerous state and federal proceedings that have found no violation of the due process clause in the acceptance of petitioner's plea.

Even so, the prior determination of state or federal courts is entitled to controlling weight when the trier of fact has, after full hearing, reliably found the relevant facts. Cf. *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The record established in exhausting state remedies is apt to alleviate the need for a federal hearing. And, as the Supreme Court has pointed out, controlling weight may be given to prior decisions if (1) the presently presented ground was determined adversely to petitioner therein, (2) the prior determinations were on the merits, and (3) the ends of justice would not be served in again reaching the merits. *Sanders v. United States*, supra, 373 U.S. at 15, 83 S.Ct. 1068. The Court went on (373 U.S. at 16, 83 S.Ct. at 1077) in that case to explain "ground":

> By "ground," we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, cf. *Wilson v. Cook*, 327 U.S. 474, 481, 66 S.Ct. 663, 90 L.Ed. 793; *Dewey v. Des Moines*, 173 U.S. 193, 198, 19 S.Ct. 379, 43 L.Ed. 665 or be couched in different language, *United States v. Jones*, 194 F.Supp. 421 (D.C.D.Kan.1961) (dictum), aff'd mem., 297 F.2d 835 (C.A.10th Cir. 1962), or vary in immaterial respects, *Stilwell v. United States Marshals*, 192 F.2d 853 (C.A.4th Cir. 1951) (*per curiam*).

In many of his prior petitioners, petitioner has asserted as ground for a writ of

habeas corpus that there was a lack of due process, i. e., that his plea was somehow involuntary. In prior litigation,[15] petitioner couched his allegations in terms of his attorney entering the guilty pleas against petitioner's will and in excess of the attorney's authority, and in terms of his attorney's competence because of a failure to explain fully the elements of the crimes and the extent of punishment, all of which are but different ways of saying that petitioner did not plead voluntarily and intelligently.

After presiding over a hearing in which petitioner was represented by counsel, and in which involuntariness of his plea was presented, Judge Jones in a Memorandum and Order[16] found that the guilty pleas were "involuntarily, knowingly, and intelligently made."

Thus, although petitioner has slanted his language in many directions the ground is the same,[17] and petitioner has already been granted full and fair evidentiary hearings on the merits of the ground that his plea was not voluntarily, knowingly, and intelligently made.[18]

Petitioner has not shown that the ends of justice would be served by reviewing the merits of his involuntariness claim yet another time. Petitioner has not asserted that prior evidentiary hearings were not full and fair, or that there has been a change in the law with respect to his involuntariness contention, or made any other persuasive allegation. Petitioner merely disagrees with the result reached.[19] Accordingly, I would agree with the many judges who have previously considered petitioner's arguments and reject the claim of violation of due process in the acceptance of his plea.

*Summary*

Petitioner pled guilty to the commission of abhorrent crimes and received stern sentences. The sentences, however, were not, in my view, so severe, relative to petitioner's criminal acts and demonstrated propensities, that they amounted to cruel and unusual punishment. I would, therefore, hold it to have been error below to conclude that petitioner's punishment for commission of common law crimes violated the Constitu-

---

**15.** *Roberts v. Warden*, 206 Md. 246, 111 A.2d 597 (1955); *Roberts v. Warden*, 221 Md. 576, 155 A.2d 891, *cert. denied*, 362 U.S. 953, 80 S.Ct. 866, 4 L.Ed.2d 871 (1959); *Roberts v. Pepersack*, 190 F.Supp. 578 (D.Md.1960), *aff'd*, 286 F.2d 635 (CA4 1960).

**16.** P.C. 313 (Criminal Court of Baltimore, 1965); see also *Roberts v. Warden*, 242 Md. 459, 219 A.2d 254, *cert. denied*, 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966).

**17.** If the present ground be different from the prior grounds, it is so closely related that petitioner's failure to present it in his plethora of petitions over two decades would be an abuse of the writ. Because the proofs for all these "grounds" would be so similar, petitioner must make a clear and convincing showing of no prior opportunity, such as by showing newly discovered facts or a change in the law.

**18.** Had those proceedings been founded on a different ground, the present petition would have been subject to dismissal for failure to exhaust state remedies.

**19.** Even if I were to reach the merits, the facts established in the various prior litigations show that the criteria for accepting a guilty plea as presented in *Smith v. Cox*, 435 F.2d 453 (CA4

1970), were met. In particular, I note that petitioner was represented by counsel of his own choosing; he had knowledge of the charges; he was present with counsel when witnesses and evidence were presented against him; petitioner, himself, freely testified to his guilt; he openly admitted guilt to his attorney; he does not allege that he was misled or denied information as to the possible sentence for any of the charges; he was 30 years old and was, of course, no stranger to courtrooms or to court procedure. If the exact number of years to which he could be sentenced was a factor in petitioner's decision to plead guilty, it must be assumed that he would have asked someone about it.

Because of the presence of the charge of assault with intent to murder, it is easy to assume that petitioner was "mousetrapped" into pleading guilty in expectation of a sentence less than that provided by statute for that crime. But that assumption conflicts with "all the surrounding circumstances" and with petitioner's delay of over two decades, during which his counsel died and the memories of others have grown dim, before founding this petition on his state of mind, a factor necessarily known to him since March 3, 1953.

tion when it exceeded the maximum statutorily provided for another crime.

Petitioner's punishment did not violate the due process or equal protection clauses of the Fourteenth Amendment and I find no violation of the Fourteenth Amendment in the procedure and circumstances surrounding petitioner's plea of guilty.

Accordingly, I would reverse the judgment of the district court and remand the case for reinstatement of the sentence originally imposed by the sentencing judge.